## Estate of Henry Seiter, Insolvent, v. Richard Mowe et al.

1. TRUST FUNDS—*Identification of the Funds and Insolvency of the Trustee.*—When a trust fund is in the hands of a trustee and its identification is destroyed by him, he can not defend against a claim by the *cestui que trust* upon the mingled mass of property when the trustee and such *cestui que trust* are the only parties interested.   But when the trustee is insolvent, and his property has passed into the hands of his assignee, other parties are interested, and the rule is different.

2. SAME— *When There is No Identification.*—Where a trustee becomes insolvent and his property passes into the hands of an assignee so there can be no identification of the trust fund, all creditors of the insolvent must share alike.

3. SAME—*To be Kept Separate—Trustee and Executive Officer.*— Where a trust fund is kept separate it is the property of the trustee for the use of the *cestui que trust*.   But it is not for the assignee to decide whether or not it has been kept separate or is capable of identification. He is an executive and not a judicial officer.

4. COUNTY COURTS—*Jurisdiction Does Not End Until the Estate is Settled.*—The oversight and regulation of a proceeding under the assignment act does not end with the term of court, but continues from term to term until the final disposition of the matter.   So long as the estate of the insolvent remains to be distributed, the County Court has power to revoke or alter any order in relation to it.

5. SAME—*Distribution Must be Pro Rata Unless, etc.*—The County Court has no authority to order a distribution otherwise than *pro rata*, unless upon a showing that prior liens exist, or that there are some controlling equities in favor of a claimant.

Voluntary Assignment.—Proceedings in the County Court of St. Clair County; the Hon. EDWARD C. ROADS, Judge, presiding.   Finding

and judgment for defendants; appeal by petitioners.    Heard in this court at the August term, 1898.    Affirmed.    Mr. Justice BIGELOW dissenting.    Opinion filed March 10, 1899.

DILL & WILDERMAN, and TURNER & HOLDER, attorneys for appellant.

Where a claim is presented to the assignee within the time prescribed by statute and he reports it to the court with a statement of it, and no exceptions are filed to it within thirty days, it becomes an adjudication of the claim as against the assigned estate. Starr & Curtis' R. S., Ch. 72, Secs. 38, 40, 41, 42; Union National Bank v. Doane, 140 Ill. 193.

It is a familiar law that a trustee can not, by any abuse of the trust, confer rights on himself, or on those who claim in privity with him, or under him as volunteers.    2 Story's Equity, Sec. 1258, 27; Am. & Eng. Ency. Law, 164, 194 and notes; 2 Pomeroy's Eq., Secs. 1075, 1076.

If a party unlawfully or fraudulently mixes and confuses his goods with those of another, held by him as agent or factor, so that they can not be distinguished, the innocent party will be entitled to take the whole.    The burden is upon the party thus confusing his goods with those of another to identify his own property.    First National Bank of Elgin v. Schween, 127 Ill. 573; Diversey, Adm'x, v. Johnson, Adm'x, 93 Ill. 547.

The rule is the same in law and in equity (Diversey v. Johnson, *supra*), and when a trustee of an express trust does mingle trust moneys with his own, the right and lien of the beneficiary attached to the whole of the combined fund as security for all that actually belongs to the trust estate.    2 Pomeroy's Eq. J., Sec. 1076; Perry on Trusts, Sec. 447.

If a trustee deposits trust funds with his banker and confuses them with his own deposits, a presumption arises in reference to the withdrawal of moneys by check whereby he will be deemed to have drawn out his own in preference to the trust moneys.    The rule charging the money first drawn out against the money first deposited has no application in such a case.    Halle v. Nat. Park Bank, 140 Ill. 413–421; 27 Am. & Eng. Ency. of Law, p. 160, 161 and notes; Importers'

etc., National Bank v. Peters, 123 N. Y. 272; Knatchbull v. Hallet, 13 Ch. Div. 696; S. C., 36 Eng. per Moake, 779.

It is sometimes said that the trust fund which has been mixed with the trustee's own funds, or which he has diverted from the trust, may be followed by the *cestui que trust* so long as he can identify them, but no further, and in the old cases which announce and adhere to the "ear mark" doctrine, the right to follow a trust fund consisting of money is practically denied wherever the trustee mingles the money with his own and uses it for his own purposes; in short, the remedy against the trustee as trustee, is denied, and the *cestui que trust* is treated as mere creditor of the trustee.

But the modern equity doctrine is that where the trustee has wrongfully used the trust fund, consisting of moneys, for his own purposes, and has converted it into other moneys, or has used it to pay his debts and preserve his property and estate, and so increased his estate to the extent of the trust fund so absorbed, the claim of the *cestui que trust* becomes a charge on the entire mass of the trustee's property. National Bank v. Insurance, 104 U. S. 54; Standard Oil Co. v. Hawkins, 74 Fed. R. 395; Peters v. Bain, 133 U. S. 670; McLeod v. Evans, 66 Wis. 401, 57 Am. R. 287; People v. City Bank of Rochester, 96 N. Y. 32; Van Allen v. American National Bank, 52 N. Y. 1; Peak v. Ellicott, 30 Kas. 156, 46 Am. R. 90; Myers v. Board of Education, 51 Kas. 87, 37 Am. St. R. 263; Independent District v. King, 80 Iowa, 497; Davenport Plow Works v. Lamp, 80 Iowa, 722, 20 Am. St. R. 442; Harrison v. Smith, 83 Mo. 210, 53 Am. R. 571; Stoller v. Coates, 88 Mo. 514; First National Bank v. Hummel, 14 Colo. 259, 20 Am. St. R. 257; Capital National Bank v. Coldwater National Bank, 49 Neb. 786, 59 Am. St. R. 572; Jones v. Kilbreth, 49 Ohio St. 401.

Where the trustee uses the trust fund moneys to enrich his estate, the whole estate becomes impressed with the trust and the *cestui que trust* may charge the whole to the extent of his claim. To hold otherwise would be to ratify the willful violation of the law by the trustee at the expense

of the innocent *cestui que trust*, and thus perpetrate a wrong. Meyers v. Board of Education, *supra;* Independent District v. King, *supra;* Davenport Plow Works v. Lamp, *supra;* McLeod v. Evans, *supra;* National Bank v. Insurance Co.,. *supra;* Harrison v. Smith, *supra;* Jones v. Kilbreth, 49 Ohio St. 401; Capital National Bank v. Coldwater National Bank, 49 Neb. 786, 59 Am. St. R. 572.

Where a trustee has converted the trust moneys to his own use and has appropriated it to enrich his estate and then makes an assignment of his estate for the benefit of his creditors, the assignee occupies the same position as the assignor and takes no greater rights; he is a mere volunteer. Jones v. Kilbreth, 49 Ohio St. 401; Davis v. Chicago Dock Co., 129 Ill. 180; O'Hara v. Jones, 46 Ill. 288; Sweet v. Scherber, 42 Ill. App. 237; Hercules Iron Works v. Hummel, 49 Ill. App. 598.

Creditors of an insolvent stand in no better position, because if they gave credit with notice that he was abusing the trust and on the faith of it, they would in effect be parties to the fraud, and it can not be presumed that they gave credit to him on the theory that he would misappropriate the trust fund and thereby increase his assets. Knatchbull v. Hallet, 36 Moak, 806.

The County Court has full equitable jurisdiction of all matters relating to claims to and against the assigned estate in all matters of insolvency. Field v. Ridgley, 116 Ill. 424; Preston v. Spaulding, 120 Ill. 208; Farwell v. Crandall, 120 Ill. 70.

Horner & Winkelmann, attorneys for appellee.

*Res adjudicata* signifies that the court has, after argument and consideration, come to a decision on a contested matter; "the court must exercise some judicial function upon the subject." Wadhams et al. v. Gay, 73 Ill. 435.

Until the final order of distribution of an assigned estate is entered, the court may repent any former action, etc. Mowatt v. Cole, 59 Ill. App. 345.

Every provision in any assignment hereafter made providing for the payment of one debt or liability in preference

to another, is void, and all debts and liabilities within the provisions of the assignment are to be paid *pro rata* from the assets thereof. Hurd Stat., Ch. 10 B, Sec. 13; Preston et al. v. Spaulding, 120 Ill. 208.

Where a trustee has converted a trust fund into money and mingled it with his other moneys, so it can not be separated from the latter, the beneficial owner occupies the position of general creditor of the estate, and can not follow the funds into the hands of an assignee for the benefit of creditors. 2 Pomeroy's Eq. Jur., Sec. 1058; Mutual Accident Ass'n v. Jacob, 141 Ill. 262; Otis v. Gross, 96 Ill. 613; Bayor v. American Trust, 157 Ill. 62.

The identification of a trust fund is a prerequisite to the exercise of the right to follow. Ill. Tr. & Sav. Bank of Chicago v. Smith, 21 Blatchf. 275; Otis v. Gross, 96 Ill. 613; Trustees v. Kirwin, 25 Ill. 73; Wetherell v. O'Brien, 140 Ill. 146; Whitcomb v. Jacobs, 1 Salkeld, 160; Scott v. Scennan, Willis, 400; Nat. Bank v. Insurance Co., 104 U. S. 54.

After referring to the Kirwin case and various other authorities, it is said many other cases might be cited, but enough has been shown to clearly indicate the line of decision holding the doctrine that trust funds can only be pursued when they can be clearly distinguished from other property held by the trustee or by those representing him. And this court is fully committed to this rule. Union Nat. Bank v. Goetz, 138 Ill. 127.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

Henry Seiter, being insolvent, on December 10, 1894, made an assignment to M. W. Weir, turning over to him notes and accounts, cash and other property aggregating $45,619.85.

In 1888 Seiter was appointed conservator of Lucetta Nichols, an insane person, and as such conservator received $2,206. This sum he mingled and used with the money of the bank of Henry Seiter & Co., referred to as the Bank of Lebanon, a private bank, owned solely, at the time of

the assignment, by said Seiter. From time to time he reported the amount in his hands as conservator. In February, 1895, the balance due from him as conservator was $1,977.66. Isaac Barton was then appointed conservator, but received no funds from his predecessor, Seiter.

On March 5th, Barton filed a claim against the estate of Seiter in pursuance of the notice of the assignee to file claims, stating that the Nichols fund was a trust fund, and praying that it might be made a preferred claim and paid in full.

On April 5th the assignee reported to the County Court the claims that had been filed. No objection was made to the Nichols claim.

On the 10th of June, 1895, L. D. Turner was appointed a conservator to succeed Isaac Barton.

On the 4th of September the assignee filed his report of moneys collected and of disbursements made, including among the disbursements the payment of the Nichols claim in full, amounting to $2,224.18, and asked for an approval of his report and for an order of the court to pay dividends.

The court entered an order that all objections to the report of the assignee be filed September 14, 1897.

To this report, appellees being general creditors, on the 11th of September filed objections to the allowance of the Nichols claim as a preferred claim, and to giving credit to the assignee for its payment, and claiming that the distribution of the assigned property should have been made *pro rata* to the creditors. The objections, together with objections filed by other creditors, were set down for hearing on September 23d. On that day the objections of appellees were overruled. Counsel for appellees claim in their state-·ment and brief that this was done in their absence. The record of the County Court, referring to its action on the 23d, is as follows :

" And now on the 23d day of September, 1897, the objections to the Riggin trust fund claim and the Nichols trust fund claim, as set out in the first and second exceptions, coming on for hearing, and understanding that the objectors by their counsel, consented thereto, the court overrules the objections as to those two claims, and orders that the report

of the assignee as to the said Riggin trust fund item and the said Nichols trust fund item, be and the same is hereby ordered and adjudged to be sustained and approved."

It is apparent from this entry that the court on the 23d day of September, at which time it overruled the objections of appellees, did not do so upon its conclusion as a matter of law, but acted upon its understanding as to a matter of fact.

On the 29th of October appellee moved the court to set aside its order of September 23d approving the assignee's report. On the 22d day of November the court allowed the motion of appellees and set aside its order of September 23d. A hearing was afterward had upon the objections of appellees, and after taking the matter under advisement, the court, on the 17th of February, 1898, sustained the objections of appellees and refused to approve the report of the assignee as to the payment of the Nichols claim, and refused to allow the assignee credit for such payment, and directed that he should recover the money back from Turner. It is from this ruling and judgment of the court that appellant brings the case to this court.

It is not claimed by appellant that the Nichols fund can be in any way identified in or among the assets in the hands of the assignee. It is clear from the evidence that it can not be identified. So far as can be seen from the evidence it has been for years mingled and indiscriminately used with the moneys of the Seiter bank.

Unless there is something to take this case out of the operation of the well established rule in this State, that claims for trust funds when the funds are mixed and incapable of identification, have no priority when the insolvent's estate is in the hands of an assignee, the ruling of the County Court sustaining the objections of appellees as general creditors was correct. For reference to authorities upon this point see Kneisley et al. v. M. W. Weir, assignee, etc., decided at this term of court.

It is true that when a trust fund is in the hands of the trustee and its identification destroyed by him, that he can

not defend against a claim by the *cestui que trust* upon the mingled mass of property when the trustee and the *cestui que trust* are the only parties interested. But when the trustee is insolvent and his property has passed into the hands of his assignee, other parties are interested. In such case when there can be no identification of the trust fund, by repeated decisions of the Supreme Court of this State, all creditors of the insolvent must share alike.

Counsel for appellant insist that in no case in which a trustee has mingled the funds of his *cestui que trust* with his own, and has made an assignment, has the Supreme Court decided that a failure to identify the fund prevents a priority against the mingled property in the hands of the trustee's assignee.

In Trustees v. Kirwin, *supra*, the court say, " Kirwin was a voluntary trustee of these funds" and as against the administrator refused to turn over any property except what was identified.

In Boyer v. American Trust & Savings Bank, 157 Ill. 68, it is said :

" It has frequently been announced as the law of this State that even in a case when a definite and actual trust fund, which possesses all the attributes of a separate and distinct identity, has been so mixed and mingled with other funds as to render identification impossible, the *cestui que trust*, in the event of the insolvency of the trustee, is remitted to the position and the rights of a general creditor."

In Wetherell v. O'Brien, 140 Ill. 146, it is said :

" When a trustee has converted a trust fund into money and mingled it with the other moneys so that it can not be separated from the latter, the beneficial owner occupies the position of a general creditor of the estate, and can not follow the fund into the hands of an assignee for the benefit of creditors."

To the same effect is Mutual Accident · Association v. Jacobs, 141 Ill. 269. Nor can we see any difference in principle, when the rights of creditors are involved, between the liability of a trustee *de jure* and a trustee *de non tort*, when the identity of the trust fund has been destroyed.

Appellant urges that the court erred in setting aside its order approving the assignee's report filed September 4, 1897, showing the payment of $2,224.18 to Turner, as conservator, and in sustaining the objections to this report.

Objections were filed by appellees September 11, 1897, to the report of the assignee. The objections were filed in apt time, under the order of the court to file objections. From the record presented, it is manifest that the court in overruling the objections did so upon the understanding that the objectors had withdrawn their objections. From the subsequent action of the court it is evident that the court did not consider that the objectors were estopped by anything they had done or said from pressing their objections against the assignee's report, and did consider that it still had jurisdiction to pass upon said report. The law terms of the St. Clair County Court are in March, July and November. The record shows that other objections pending September 23d were heard on October 9th.

Without passing upon the question as to whether the County Court, in assignment proceedings, should or should not hold a motion to be filed too late if filed at a subsequent term to set aside an order made at a previous term, it is enough to say in this case that it does not appear that the motion to set aside the order of September 23d was made at a subsequent term. The oversight and regulation of proceedings under an assignment do not end with a term of court, but continue from term to term until the final disposition of the case. So long as the estate of the insolvent remains to be distributed the County Court has power to revoke or alter any order in relation to the administration of the estate. Hanford Oil Co. v. First Nat. Bank, 126 Ill. 584; Mowatt v. Cole, 59 Ill. App. 346.

The estate of Seiter, in the eye of the law, was undistributed on the 4th of September, 1897, when the assignee made his report and asked for its approval. He understood this, for in his report he asks for an order of distribution. Up to this time there had been no adjudication upon the character of the claims filed. The assignment act requires

the assets of the insolvent to be distributed *pro rata* among his creditors.    The County Court must so order, unless it is made to appear to the court that equities exist which require that a different order should be made.    The assignee is only authorized to make distribution as ordered by the County Court.    Sec. 4, Chap. 72, Starr & Curtis' Statutes.    He has no discretion in the matter, and the County Court has no authority to order a distribution otherwise than *pro rata* unless upon showing that prior liens exist, or that there are controlling equities in favor of a claimant.    It is true that if a trust fund had been kept separate, or could be identified in the hands of the assignee, that the County Court would have authority, and it would be its duty, to direct its payment to the trustee.    Nor would this be in contravention of the assignment act, requiring a *pro rata* distribution of the insolvent's estate; for the reason that a trust fund so kept separate is not a part of the assets of the insolvent in the hands of the assignee to pay the debts.    While so kept separate it is the property of the trustee for the use of the *cestui que trust*.    But it is not for the assignee to determine whose property it is.    It is not for him to decide whether or not it has been kept separate or is capable of identification.    He is an executive and not a judicial officer.    The right of Barton to have the Nichols claim made a preferred claim depended upon his ability to show that it could be identified.    His right was not established by merely claiming that it should be preferred.    Nor were creditors concluded by not filing objections to his claim of preference. The time for creditors to object to a claim's being preferred is when the claim comes to be considered by the court and an order of distribution made.    The only claims that the statute recognizes as preferred claims, when no objections are filed, are claims for laborers' wages.    The inference is that a failure to make objections to other claims filed as preferred claims does not prevent contesting such claims for preference when an order of court is sought declaring them to be preferred.    If, before any adjudication by the court declaring that a claim is preferred, the assignee assumes to

decide that it is preferred, and so deciding, pays it, he does so at his peril.

. In the present case then, the assignee having paid the Nichols claim in full to Turner, without authority and without any adjudication by the court as to its right of preference, and it appearing from the evidence under the law that it is not entitled to a preference, the assignee must be held responsible for the amount so paid out without authority. In contemplation of law it is still an undistributed part of the insolvent's estate and subject to the order of the County Court. If it had been paid out upon an erroneous order of the court, which order the court afterward found out to be erroneous, and therefore set it aside, a different question would be presented. But that is not this case. The money was paid without any order. The act of the assignee in making payment was his own act.

· The evidence, upon the hearing, showing that the fund was mixed and incapable of identification, the court could do no less than set aside its order of September 23d, and sustain the objections of appellees to its being made a preferred claim.. To have held differently would have been to conflict with an unbroken line of decisions of the Supreme Court where trust funds in the hands of an assignee are incapable of identification.

· The finding and judgment of the County Court is therefore affirmed.

. Mr. Justice Bigelow dissenting.

· I am unable to agree with the majority of the court in affirming the judgment in this case. The claim, as verified and filed, was clearly intended to be prosecuted by the claimant as a preferred claim against the insolvent's estate. It was not objected to because the ground for the claim was not sufficient to give it the character of a preferred claim; nor was it objected to for any reason whatever, by any creditor of the assignee, or any other person interested in the estate, as provided by section 5 of the assignment act; hence it may be said, that all such persons were in the

position of one who, when sued, makes default. Under·
such circumstances, it would seem that no special order of
the court was necessary to establish the claim, either as to
its amount or its quality.    It was a·trust claim while the
assignor was managing the trust, and he never in fact·
turned·the money over to his successor in trust, but it
remained in Seiter's so-called bank when he made an assign-
ment, and the probability is that Seiter's creditors believed.
that the claim would necessarily have to be paid in full
before the general creditors would be permitted to share in
the assets of the estate; and this evidently was the reason
why they did not object to its allowance as a preferred·
claim until long after the time allowed by said section 5·
had elapsed.    Under such circumstances, if the assignee did
wrong in paying the claim in full, it may· be fairly claimed
that he was led to do it by the neglect of the creditors in.
not objecting to the quality of the claim, and having its
character established by the court in the time and manner
provided by law, for the future guidance of the assignee.
But if the action of the assignee in paying the claim as·
preferred was irregular, the time to have cured the irregu-
larity was the time fixed by the court to hear the objections
filed to the report.    When this time arrived the objectors
again made default by not appearing to urge·their objec-
tions, and the court was justified in the conclusion that the
objections were waived, and that, in substance, is what the
court's finding was, and if it was wrong the fault lay at
the door of the objectors.    Under the circumstances the
approval of the report was clearly an adjudication·by the
court, of which the objecting creditors were bound to take
notice.    No motion was made at the September term of the
court to vacate the order approving the report and hear
the objections on their merits, nor did the objectors appeal
from the order as they should have done if dissatisfied
with it, but remained quiescent with full knowledge of what
had been done until the 29th of October following, when
they made a motion to set aside the order approving the
assignee's report, which was allowed, and·some months there- ·

after and on the 17th of February, 1898, the court reversed its order of September 23d, without notice to the trustee to whom the money had been paid, and ordered the assignee to collect the money from him instead of ordering the trustee to refund it, as would seem the proper thing to have done if it had jurisdiction of the trustee.

It is not claimed that any fraud was practiced on the court that caused it to make the order of September 23d, but the claim is that the court acted upon the understanding that the objectors had withdrawn their objections to the report, and that the court afterward concluded it was mistaken. It may well be asked, where were the objectors and their counsel when the order was made? It should clearly appear from the record itself that the judgment was an agreed judgment of the parties, otherwise the conclusion is irresistible that it was the judicial determination of the court, and could not be overturned because of any misunderstanding of either law or fact.

I do not think the question whether the assignor mixed and mingled the trust fund with his own private funds, so that the former lost its identity, or what the law may be in relation to the matter if it was mixed and lost its identity, properly arises in this case. These questions were settled by the order approving the assignee's report, which has not been appealed from or legally vacated.

The question whether the claim filed by the trustee should be paid before the general creditors should share in the assets of the insolvent, required an immediate answer, and when once answered it should not have been opened for further dispute, and the proceedings opening it, with all that was thereafter done, were, in my opinion, absolutely void, and should be reversed.